UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INTERNATIONAL BROTHERHOOD OF :
ELECTRICAL WORKERS SYSTEM :
COUNCIL NO. 7, ET AL., :
 :
    Plaintiff, :
 : CASE NO. 3:06CV1945(RNC)
    v. :
 :
MTA METRO-NORTH RAILROAD, :
 :
    Defendant. :

ORDER ON PLAINTIFFS' MOTION TO ENFORCE JUDGMENT

Pending before the court is the plaintiffs' Motion to Enforce Judgment, doc. #12. The court heard oral argument on the plaintiffs' motion on April 12, 2007.

The plaintiffs are unions representing various trades employed by defendant MTA Metro-North Railroad ("Metro-North"). (Am. Compl., doc. #8, ¶¶6-12.) This lawsuit was filed on December 4, 2006 and settled on or about December 8, 2006. The plaintiffs now claim that the defendant has violated the settlement agreement.

According to the plaintiffs' complaint, this lawsuit was prompted by an allegedly impermissible change in employment practices[1] by the defendant. In late October of 2006, Metro-

---

[1] The plaintiffs' complaint alleged that, because the plaintiffs and Metro-North are engaged in collective bargaining over the terms and conditions of employment, the Railway Labor Act mandates that Metro-North cannot unilaterally alter past employment practices until RLA procedures have been exhausted. (Am. Compl., ¶ 19.) The plaintiff alleges that Metro-North's actions violated this RLA "status quo" requirement. (Id.)

North mailed a memorandum to the plaintiff unions' members that required employees to submit certain documents known as Forms A, B, C and D. (Am. Compl. ¶21; Compl., doc. #1, Ex. 3.) The forms are all attached as exhibits to the plaintiffs' Complaint and are referenced in the plaintiffs' Amended Complaint. It is undisputed that most of the employees who were asked in October 2006 to submit those forms had not previously been required to submit them.[2]

The complaint and settlement agreement both focused on Form D[3], even though the memorandum sent to the employees in October had also required submission of Forms A, B and C. The parties' Settlement Agreement and Consent to Judgment (the "settlement agreement") was approved by the court, doc. #10, and judgment was entered in accordance with the settlement agreement, doc. #11.

Under the settlement agreement, Metro-North specifically agreed to discontinue use of Form D. No reference was made to the other forms. Paragraph 5 of the settlement agreement states:

> Any change in the practice regarding employees'
> provision of motor vehicle records information that
> involves as a condition of employment the waiver of
> employees' federal statutory rights under the federal

---

[2] The parties dispute whether the requirement that employees submit Forms A, B and C was really a change in practice. The defendant's written policies previously stated that the employees at issue must submit Forms A, B and C, but it is undisputed that the written policy was not enforced prior to the autumn of 2006. The court need not reach this factual issue.

[3] Form D was an authorization permitting the defendant to obtain investigative report of each employee's driving record from the state at any time during the individual's continued employment.

> Driver's Privacy Protection Act, 18 U.S.C. § 2721, et
> seq., and the Federal Credit Reporting Act, 15 U.S.C.
> Section 1681, et seq., will first have to be negotiated
> with and expressly agreed to by the plaintiff unions.

(Doc. #10, ¶5.)

After the case had been settled, on or about January 5, 2007, the defendant sent employees another memo requiring them to complete and submit Forms A, B and C. The plaintiffs allege that this memo was in violation of paragraph 5 of the parties' settlement agreement because Forms B and C require the waiver of federal statutory rights under the Driver's Privacy Protection Act.[4]

Form B asks employees, inter alia, to provide "a true and complete list of traffic violations, other than those for parking violations, for which [they] have been convicted, paid a fine or forfeited bond or collateral during the past 12 months." (Doc. #1, Ex. 3 at 25.) For each violation, the employee is asked to provide details in columns labeled "Date," "Offense," "Location (City & State)," "Vehicle Type Operated," and "Penalty." (Id.) Form C requires the employees to report the revocation, suspension or violation of their license. (Id. at 26.) The form also states that "You must also advise the railroad in writing within 30 days of any violation of state or local traffic laws,

---

[4] The plaintiffs conceded at oral argument that the request for driver's license information in Form A is consistent with the defendant's prior employment practices. Therefore, there is no allegation that Form A violates the settlement agreement. Instead, the dispute centers on the traffic violation information requested by Forms B and C.

3

including parking violations."  (Id.)

The plaintiffs contend that the defendant's failure to negotiate with the unions before sending out the January memo requiring submission of Forms B and C violates Paragraph 5 of the settlement agreement because it "involves as a condition of employment the waiver of employees' federal statutory rights under the federal Driver's Privacy Protection Act, 15 U.S.C. Section 1681, et seq."  Specifically, the plaintiffs object to those portions of Forms B and C that require employees to report traffic violations.

The defendant responds that Forms B and C do not involve the waiver of statutory rights under the federal Driver's Privacy Protection Act ("DPPA"), and therefore Paragraph 5 does not apply.  The parties agree that the question of whether the forms involve waiver of DPPA rights is a threshold issue for plaintiffs' motion.  If the forms do not affect such rights, then the defendant has not violated the settlement agreement.

"The DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." Reno v. Condon, 528 U.S. 141, 143 (2000).  In addition to limiting the information that a state's department of motor vehicles can disclose, the DPPA also provides a private cause of action against any person who misuses or improperly rediscloses personal information obtained from the department of motor vehicles.  See 18 U.S.C. § 2724(a).  The

4

statute only regulates the disclosure of "personal information," which is defined as follows:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents, driving violations, and driver's status.*

18 U.S.C. §2725 (emphasis added). On its face, the unambiguous language of the statute does not provide any protection for the traffic violation information sought by Forms B and C.[5] The plaintiff has not cited, and the court has not found, any caselaw to the contrary.

The court finds that the traffic violation information sought by Forms B and C does not require "the waiver of employees' federal statutory rights under the federal Driver's Privacy Protection Act" and therefore does not implicate paragraph 5 of the settlement agreement. The plaintiffs' Motion to Enforce (doc. #12) is denied.

SO ORDERED at Hartford, Connecticut this 18th day of April, 2007.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

---

[5] Courts that have reviewed the DPPA's legislative history have noted that it was passed as part of a crime fighting package and that it was intended as a response to reports of crimes committed by stalkers who obtained their victims' home addresses from DMV records. See, e.g., Margan v. Niles, 250 F. Supp. 2d 63 (N.D.N.Y. 2003).